WHITAKER, Appellant,

v.

ESTATE OF WHITAKER; Reed, Appellee.

[Cite as *Whitaker v. Estate of Whitaker* (1995), 105 Ohio App.3d 46.]

Court of Appeals of Ohio,
Fourth District, Ross County.

No. 94CA2018.

Decided June 26, 1995.

---

*Carlile, Patchen & Murphy, Robert B. Barnett* and *Laurence E. Sturz,* for appellant.

*Teaford, Rich, Coffman & Wheeler, J. Gary Coffman* and *Timothy G. Crowley; Barrington Law Offices* and *James E. Barrington,* for appellee.

---

HARSHA, Judge.

This is an appeal from a judgment of the Ross County Court of Common Pleas, Probate Division, regarding the executor's seventh and final fiduciary's account in the estate of Patricia J. Whitaker.

Appellant raises the following assignments of error:

Assignment of Error No. 1:

"The trial court erred in depriving appellant of his property without due process of law."

Assignment of Error No. 2:

"The trial court erred in surcharging appellant for certain expenditures made from the estate."

Assignment of Error No. 3:

"The trial court erred in denying appellant the reasonable and necessary estate expenses."

The Ross County Court of Common Pleas, Probate Division, appointed appellant Michael D. Whitaker executor of the estate of Patricia J. Whitaker in November 1984. Appellant and Catharine Reed, appellee, are residual beneficiaries of the estate.[1] On August 13, 1993, appellee filed a motion to vacate entries settling fiduciary accounts and objections to fiduciary's accounts, pursuant to R.C. 2109.33. This motion contained objections to the appellant's first through sixth accounts. On September 17, 1993, appellee filed a motion to remove and surcharge the executor and a motion to appoint a commissioner. The court held a hearing on appellee's objections on September 30, 1993. Appellant tendered his resignation as executor on October 1, 1993, and the court appointed two individuals to serve the estate as coadministrators.

Following the September 30, 1993 hearing, the court issued an October 4, 1993 journal entry, wherein it found that appellant had conducted unauthorized transactions in violation of his fiduciary duties to the estate and that there were grounds to remove appellant as executor. The court also ordered appellant to file a final fiduciary's account. Subsequently, appellant filed his seventh and final fiduciary's account. Appellee, Catharine Reed, filed objections to this account. The first of these objections stated, "The objections filed herein on August 13, 1993, as to the First through Sixth Fiduciary's Accounts, are hereby reiterated and incorporated by reference as if fully herein rewritten."

The probate court scheduled the hearing on the fiduciary's seventh account for March 31, 1994, in a notice stating that the sole subject matter of the hearing would be appellee's objections to the seventh fiduciary's account. At the March 31 hearing, appellant stipulated to appellee's objections to the seventh fiduciary's account.[2] The court then proceeded to a hearing on appellee's motion to

---

**1.** There were additional beneficiaries of the estate, specifically named in the will of Patricia J. Whitaker. However, these beneficiaries have already received their distributions.

**2.** The following is a list of these objections. *Account # 1:* (1) expenditures for the continuance of the decedent's farm business without court authorization, (2) the lack of detail in account entries concerning farm income, (3) reimbursement for travel expenses, (4) improper classification of a loan involving the estate of Howard E. Whitaker, (5) disbursements for household help, (6) disbursements for "insurance work," (7) disbursements to Chillicothe Cablevision, (8) premature and excessive disbursements for fiduciary fees, (9) improper listing of one-half interests in livestock when the livestock assets had been converted to cash, (10) $60,000 in invalid gifts made by the executor; *Account # 2:* (1) improperly carrying on the decedent's farm business without court permission, (2) the lack of detail in account entries concerning farm income, (3) improper listing of one-half interests in livestock when the livestock assets had been converted to cash, (4) improper expenditures for household help, (5) improper expenses for utility bills, (6) additional expenditures for "insurance work," (7) improper disbursement of fiduciary fees, (8) disbursements to Chillicothe Cablevision, (9) disbursements for improvements to decedent's home; *Account # 3:* (1) assets undistributed after the federal estate tax return was completed, (2) disbursements for continuing the decedent's farm business, (3) the lack of detail in account entries concerning farm income, (4)

surcharge the executor. Appellant objected that he was not prepared to defend against this motion. However, the court heard testimony and took evidence. The court then continued the matter until April 13, 1994, and issued an interlocutory order, which, among other things, disallowed certain expenditures made by appellant as executor of the estate and instructed the estate's coadministrators to prepare a final listing of suspect expenditures. At the April 13, 1994 hearing, appellant presented additional evidence, which he had been unprepared to offer at the March 31 hearing. On May 23, 1994, the court entered an order surcharging appellant in the amount of $139,998.74. This case is now before us by virtue of appellant's timely appeal.

Appellant's first assignment of error contends that he was denied due process of law. He argues that he did not have reasonable notice that the hearing on the appellee's objections to the seventh fiduciary's account would expand into a final hearing on appellee's motion to surcharge appellant for expenditures made during appellant's executorship of the estate.

Both the Fourteenth Amendment to the United States Constitution and Section 16, Article I of the Ohio Constitution affirm that no person shall be deprived of life, liberty, or property without due process of law. The concept of due process has been deemed to encompass both substantive and procedural rights. In this case, we deal with the question of procedural due process. The essence of procedural due process is the right to receive reasonable notice and a reasonable opportunity to be heard. *Mullane v. Cent. Hanover Bank & Trust Co.* (1950), 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865, 873, and *State ex rel.*

---

improper listing of one-half interests in livestock when the livestock assets had been converted to cash, (5) disbursements for household help, (6) disbursements for utility bills and real estate taxes, (7) disbursements to Chillicothe Cablevision, (8) disbursements for maintaining decedent's farm, (9) disbursements for "I.R.S. installment pymnt. 706," (10) losses due to the failure to pay Ohio estate taxes; *Account # 4:* (1) disbursements for continuing the decedent's farm business, (2) assets undistributed after the federal estate tax return was completed, (3) the lack of detail in account entries concerning farm income, (4) improper listing of one-half interest in livestock and harvested crops converted to cash, (5) entry of a loan repayment as evidence of self-dealing, (6) disbursements to various individuals without explanation, (7) disbursements for utility bills and estate taxes, (8) disbursements to Chillicothe Cablevision, (9) excessive payments on federal estate tax, (10) excessive expenses due to the failure of the executor to pay interest on deferred Ohio estate taxes; *Account # 5:* (1) commingling of assets with individual property, (2) expenditures to maintain property owned by the executor, (3) excessive payment of interest on federal estate tax, (4) attorney fees, (5) a disbursement for delinquent real estate taxes; *Account # 6:* (1) commingling of estate assets with individual property, (2) expenditures to maintain property owned by the executor in his individual capacity, (3) disbursements for excessive payment of interest and federal estate taxes, (4) disbursements to various individuals without explanation, (5) a $30,000 disbursement to the Attorney General without explanation, *Account # 7:* (1) reincorporation of all objections to accounts 1–6, (2) receipt of farm income improperly included as asset of the estate, (3) disbursements for maintenance of real estate already distributed, and finally (4) disbursement of attorney fees.

*Allstate Ins. Co. v. Bowen* (1936), 130 Ohio St. 347, 4 O.O. 427, 199 N.E. 355. We therefore examine the record to determine whether, as a matter of law, appellant received reasonable notice and a reasonable opportunity to be heard. *Ohio Valley Radiology Assoc., Inc. v. Ohio Valley Hosp. Assn.* (1986), 28 Ohio St.3d 118, 123, 28 OBR 216, 220–221, 502 N.E.2d 599, 603–604.

Appellant received a notice regarding the March 31 hearing which made him aware that the objections to the seventh fiduciary's account would be addressed at that hearing. Those objections included an objection to all accounts filed by appellant. The information appellant needed to defend against the motion to surcharge him as executor and to defend against the objections to accounts one through six is essentially the same. Technically, appellant did not have notice that the court would hear the motion to surcharge him as executor on March 31, but it is difficult to assert that appellant should not have been prepared for such a hearing on March 31.

However, even assuming it was unreasonable for appellant to be prepared to address the motion to surcharge the executor at the March 31 hearing, the probate court continued the hearing until April 13, 1994. Appellant was given nearly two additional weeks to prepare evidence on the motion to surcharge him. Indeed, appellant came to the April 13 hearing with numerous additional documents. Moreover, appellant presented evidence that he had not had at the March 31 hearing. Both the court and counsel for appellee asked appellant if he had any additional information to submit at the April 13 hearing. Appellant clearly had an opportunity to present any evidence he could not have presented earlier. We therefore find that appellant had reasonable notice of the court's consideration of the motion to surcharge and a reasonable opportunity to be heard due to the court's continuation of the March 31 hearing. See, generally, *Rossman v. Conran* (1988), 61 Ohio App.3d 246, 250, 572 N.E.2d 728, 730. Accordingly, appellant's first assignment of error is overruled.

Appellant's second assignment of error asserts that the probate court erred in surcharging appellant for certain of appellant's expenditures from estate funds. Under R.C. 2109.01, appellant, as executor of Patricia J. Whitaker's estate, was a fiduciary. "A fiduciary relationship is one in which special confidence and trust is reposed in the integrity and fidelity of another and there is a resulting position of superiority of influence, acquired by virtue of this special trust." *In re Employment of Pratt* (1974), 40 Ohio St.2d 107, 115, 69 O.O.2d 512, 517, 321 N.E.2d 603, 609. It is well established that " '[w]here the law creates fiduciary relations, it seeks to prevent the abuse of confidence, by ensuring the disinterestedness of its agents. * * * ' " *Magee v. Troutwine* (1957), 166 Ohio St. 466, 468–469, 2 O.O.2d

471, 472, 143 N.E.2d 581, 583, quoting *Armstrong v. Heirs of Huston* (1838), 8 Ohio 552.[3]

■ The powers of executors who serve as fiduciaries are outlined in the Revised Code. See, *e.g.*, R.C. Chapters 2109 and 2111. A fiduciary who exceeds his statutorily granted powers does so at his own risk. In fact, when objections are taken to an executor's account, the burden of establishing the validity of the account is upon the executor. *In re Estate of Butler* (1940), 137 Ohio St. 96, 17 O.O. 432, 28 N.E.2d 186, paragraph three of the syllabus.

The present dispute involves surcharges against appellant arising from exceptions to the following charges appellant allegedly incurred on behalf of the estate[4]:

| Amount | Description |
|--------|-------------|
| $ 5,000 | Surcharge for unrepaid loan to appellant from estate |
| $16,706.46 | Surcharge for failure to invest funds of estate |
| $41,061.97 | Surcharge for expenses incurred in maintaining real estate not owned by the estate |
| $12,996.67 | Surcharge for interest on Ohio estate taxes |
| $23,500 | Surcharge for attorney fees incurred by appellee |
| $ 1,000 | Surcharge for expenses incurred by appellee |

■ Regarding factual determinations, a trial court will not be reversed where there is some competent, credible evidence going to all essential elements of the case. *Sec. Pacific Natl. Bank v. Roulette* (1986), 24 Ohio St.3d 17, 20, 24 OBR 14, 16–17, 492 N.E.2d 438, 440–441, and *C.E. Morris Co. v. Foley Constr. Co.* (1978), 54 Ohio St.2d 279, 8 O.O.3d 261, 376 N.E.2d 578. Under this highly deferential standard of review, any evidence is sufficient to sustain the judgment and prevent a reversal if it applies to all the essential elements of the case. *Chicago Ornamental Iron Co. v. Rook* (1915), 93 Ohio St. 152, 112 N.E. 589.

The trial court's determination whether a violation occurred concerning the first three surcharges listed above is factual in nature. We therefore examine

---

**3.** Although *Magee* and *Armstrong* dealt with the responsibilities of a fiduciary in the context of the sale and purchase of land, the general reference to the role of a fiduciary is applicable in the present case.

**4.** We are aware that appellant has stipulated to facts that resulted in findings made by the probate court in an October 4, 1993 journal entry. These findings are similar to those made in the probate court's April 1, 1994 journal entry. Although we may look to these other orders, *Balson v. Dodds* (1980), 62 Ohio St.2d 287, 289, 16 O.O.3d 329, 330–331, 405 N.E.2d 293, 295, we principally concern ourselves in this case with the probate court's order of May 23, 1994.

the record for competent, credible evidence to support the probate court's determination with regard to the first three surcharges.

■ Initially, we consider the $5,000 loan. At the April 13, 1994 hearing, the probate court questioned appellant regarding the $5,000 partial distribution he made to himself during the period of the estate's second account, October 1, 1985, to September 30, 1986. The appellant replied that this distribution was really a loan, which he repaid to the estate with interest in the amount of $7,000. Self-dealing by a fiduciary is generally prohibited. R.C. 2109.44 states that "[f]iducia-ries shall not buy from or sell to themselves nor shall they * * * have any dealings with the estate, except as expressly authorized by the instrument * * * or with the approval of the probate court * * *." See, also, *Magee, supra,* and *Walters v. Wannemacher* (1964), 6 Ohio App.2d 226, 35 O.O.2d 385, 217 N.E.2d 695. The applicable instrument, in this case the will of Patricia J. Whitaker, contains no authorization for the fiduciary-appellant to engage in any kind of self-dealing, and an approval of the probate court for the loan at issue appears nowhere in the record.

The probate court was in the best position to evaluate the credibility of witnesses and was intimately familiar with the lengthy history of this case. See *Seasons Coal Co. v. Cleveland* (1984), 10 Ohio St.3d 77, 10 OBR 408, 461 N.E.2d 1273. Based upon our review of the record, there is certainly competent credible evidence to support the probate court's finding with regard to the $5,000 loan.

■ Next, we address the surcharge of $16,706.46 for failing to invest funds of the estate. R.C. 2109.41 requires a fiduciary to invest estate funds in one or more depositaries. Failure to do so results in the fiduciary's liability to the estate for the amount of interest lost. R.C. 2109.42. See, also, *In re Shanafelt's Estate* (1955), 164 Ohio St. 258, 58 O.O. 7, 129 N.E.2d 816, and *Chapman v. Menke* (App.1944), 45 Ohio Law Abs. 625, 68 N.E.2d 361. The record clearly reflects appellant's failure to invest estate funds. The probate court's surcharge against appellant for $16,706.46 for failing to invest funds of the estate was calculated based upon the average cash balance in each of the seven accounts of the estate. The interest rate was figured at five percent.

Appellant does not deny his liability for at least a portion of the interest lost by his failure to invest estate funds, but he asserts that the probate court's interest calculations were not based upon competent, credible evidence. Appellant further argues that he was denied the opportunity to offer any evidence on this matter. However, the record reflects information upon which the probate court could have based its calculation. Appellee's supplemental memorandum in support of motion to surcharge contains Exhibit B, which shows the beginning and ending cash balances of the estate accounts during appellant's administration.

Appellee presented testimony in the probate court regarding the substance of Exhibit B. This is certainly competent, credible evidence upon which the probate court could have made its determination. As stated above, appellant was not deprived of an opportunity to present evidence in the present case. Thus, the probate court's decision on this issue will not be disturbed.

Third, we consider the surcharge of $41,061.97 for expenses incurred in maintaining properties that were not estate assets at the time the expenditures were made. There is no statutory authority for such expenditures. See, *e.g.*, R.C. 2109.44. Once an asset has been properly distributed from an estate, the estate can no longer be responsible for its maintenance and the probate court loses jurisdiction over it. See *State ex rel. Beedle v. Kiracofe* (1964), 176 Ohio St. 149, 151, 27 O.O.2d 25, 26, 198 N.E.2d 61, 63–64. Appellant admits that these expenses were incurred after the real estate was transferred from the estate to appellant and appellee. Therefore, there is competent, credible evidence to support the probate court's surcharge of appellant for expenses in maintaining the subject property.

We now evaluate the probate court's actions concerning the surcharge of $12,996.67 for interest on Ohio estate taxes, $23,500 in attorney fees, and $1,000 spent by appellee Catharine Reed in acting to preserve estate assets. An appellate court reviews such determinations by a probate court for an abuse of discretion. *In re Estate of Kellhofer* (Feb. 18, 1982), Ross App. No. 943, unreported, 1983 WL 3125. An abuse of discretion involves more than an error of judgment; it connotes an attitude on the part of the court that is unreasonable or arbitrary. *Franklin Cty. Sheriff's Dept. v. State Emp. Relations Bd.* (1992), 63 Ohio St.3d 498, 589 N.E.2d 24.

Appellant asserts that the probate court abused its discretion in surcharging appellant for the $12,996.67 in interest on Ohio estate taxes. Again, we disagree. Appellant chose to defer the payment of estate taxes by the estate, a choice to which he was entitled under R.C. 5731.25. However, the critical issue is not whether appellant was entitled to defer the payment of estate taxes, but whether appellant's deferral of estate taxes was an actual and necessary expense. R.C. 2113.36. To be an actual and necessary expense under R.C. 2113.36, the expense must be "considered just and reasonable by the court." *In re Estate of Kellhofer, supra.*

Appellant's testimony reflects that he had "no opinion" whether the deferral of estate taxes was in the best interest of the estate, and that the estate, indeed, paid interest on the Ohio estate tax because the tax "had not been paid." The conclusion that the additional interest due on the Ohio estate tax was caused by the action of appellant and that the decision to defer estate tax payments resulted

in an unjust and unreasonable expense was not an abuse of discretion by the probate court.

■ Appellant next asserts that he should not be surcharged for the $23,500 in attorney fees and $1,000 in expenses incurred by Catharine Reed in objecting to appellant's accounts. We agree. This particular surcharge is, in essence, an award of attorney fees against the losing party and in favor of the estate. Ohio follows the American rule regarding the imposition of attorney fees. The American rule was articulated by the Ohio Supreme Court in *Sorin v. Warrensville Hts. School Dist. Bd. of Edn.* (1975), 46 Ohio St.2d 177, 75 O.O.2d 224, 347 N.E.2d 527. In *Sorin*, the court noted that an award of attorney fees must be authorized by statute. The one exception to this rule is that a court may award attorney fees upon a finding of conduct which is vexatious, wanton, obdurate, undertaken for oppressive reasons or which amounts to bad faith. *Id.*; see, also, *Vance v. Roeder-Sheimer* (1992), 64 Ohio St.3d 552, 597 N.E.2d 153, and *Sturm v. Sturm* (1992), 63 Ohio St.3d 671, 590 N.E.2d 1214.

■ There is no statutory authority for the award of attorney fees in the present case. There is sufficient evidence in the record of wanton conduct or bad faith on the part of appellant.[5] However, there is no evidence in the record of the reasonableness of the attorney fees sought to be surcharged against the executor. It is well settled that the movant has the burden of proving that the attorney fees sought were actually incurred and are reasonable. *In re Estate of Verbeck* (1962), 173 Ohio St. 557, 558–559, 20 O.O.2d 163, 164–165, 184 N.E.2d 384, 385–386; *In re Estate of Wood* (1977), 55 Ohio App.2d 67, 9 O.O.3d 225, 379 N.E.2d 256; and DR 2–106(B).

The record reflects that the court held no hearing specifically regarding the imposition of attorney fees.[6] Some appellate districts have held that a court may use its own knowledge in reviewing the record to determine the reasonableness of attorney fees. *Gearig v. Gearig* (Mar. 31, 1993), Lucas App. No. L–92–150, unreported, 1993 WL 93525, and *Dillon v. Dillon* (Sept. 20, 1988), Franklin App. Nos. 88AP–232 and 233, unreported, 1988 WL 99324. Assuming the validity of these holdings, it seems apparent that at a minimum, the record must demonstrate evidence of the reasonableness of the attorney fees. See *Drake v. Menczer* (1980), 67 Ohio App.2d 122, 21 O.O.3d 429, 425 N.E.2d 961; *Swanson v. Swanson* (1976), 48 Ohio App.2d 85, 90, 2 O.O.3d 65, 68–69, 355 N.E.2d 894, 898; *Estep v.*

---

5. For instance, appellant engaged in significant self-dealing by making unauthorized loans to himself from estate funds.

6. Although attorney fees are mentioned by counsel during the April 13, 1994 hearing, the court indicated that it wished for counsel to submit briefs on the matter.

*Estep* (Aug. 8, 1990), Ross App. No. 1586, unreported, 1990 WL 119255 (Harsha, J., concurring).

 In order to determine the reasonableness of the attorney fees to be awarded, the trial court must consider the factors set forth in DR 2–106(B). *Swanson, supra.*[7] Although the trial court referred to some type of documentation regarding attorney fees in its May 23, 1994 journal entry and stated that those fees were reasonable, the record reflects none of the required information from which a determination of reasonableness could have been made. Where the record is devoid of sufficient evidence upon which to conclude that the attorney fees sought are reasonable, we must reverse a lower court's award of attorney fees. See *Estep, supra* (Harsha, J., concurring). Therefore, we reverse the surcharge of appellee's attorney fees to appellant.[8] We also reverse the $1,000 surcharge for appellee's accountant, there being no statutory or other authority for the imposition of this surcharge. Accordingly, to the extent outlined above, we overrule in part and sustain in part appellant's second assignment of error.

Appellant's final assignment of error asserts that the probate court erred in denying appellant reasonable and necessary estate expenses. The court below acted under the authority of R.C. 2113.35 and 2113.36 in denying the following expenses:

---

7. In order to determine the reasonableness of attorney fees awarded, the trial court must consider the factors set forth in DR 2–106(B), which requires an examination of the following:

"(1) The time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly.

"(2) The likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer.

"(3) The fee customarily charged in the locality for similar legal services.

"(4) The amount involved and the results obtained.

"(5) The time limitations imposed by the client or by the circumstances.

"(6) The nature and length of the professional relationship with the client.

"(7) The experience, reputation, and ability of the lawyer or lawyers performing the services.

"(8) Whether the fee is fixed or contingent." *Swanson* and *Estep, supra* (Harsha, J., concurring).

8. Although we reverse the court's award of attorney fees to the estate, we recognize the common-fund theory of recovery, which allows a beneficiary who has incurred attorney fees as the result of litigation undertaken principally for the benefit of the estate to recover expenses from the estate. See *In re Estate of Fugate* (1993), 86 Ohio App.3d 293, 620 N.E.2d 966; *In re Estate of Brown* (1992), 83 Ohio App.3d 540, 615 N.E.2d 319; *In re Keller* (1989), 65 Ohio App.3d 650, 584 N.E.2d 1312; and *In re Estate of Colosimo* (1957), 104 Ohio App. 342, 5 O.O.2d 24, 149 N.E.2d 31. The Ohio Supreme Court has recognized but not expressly approved the common-fund theory of recovery in the context of disputes involving beneficiaries of an estate. See *In re Estate of Zonas* (1989), 42 Ohio St.3d 8, 536 N.E.2d 642. The common-fund theory of recovery cannot apply in the instant case because the source of the recovery is the former executor himself, not the estate.

| Amount | Description |
| --- | --- |
| $19,700.84 | Surcharge for fiduciary fees |
| $ 4,800 | Surcharge for appellant's attorney fees |
| $ 5,303 | Surcharge for travel expenses |
| $ 9,929.80 | Surcharge for repairs in excess of the insurance coverage to the estate |

We deal first with the question of fiduciary fees. Appellant asserts that the probate court erred in denying him $19,700.84 in fiduciary fees. We disagree. Under R.C. 2113.35, a court generally awards a commission to an executor of an estate, unless the court "finds, after hearing, that the executor * * * has not faithfully discharged his duties." Where a court finds that the executor did not faithfully discharge his duties, the court may deny the executor any compensation whatsoever, or may reduce the executor's compensation accordingly. R.C. 2113.35.

From this statutory language, it is apparent that a probate court's determination under R.C. 2113.35 reducing or denying a requested commission will not be reversed on appeal absent an abuse of discretion. *In re Estate of Gray* (1963), 118 Ohio App. 547, 26 O.O.2d 65, 196 N.E.2d 131, and *In re Estate of Justice* (Aug. 24, 1993), Pickaway App. No. 93CA2, unreported, 1993 WL 335010.

A review of the record in the instant case reveals that appellant's tenure as executor of the estate at issue was fraught with mismanagement, poor decisionmaking and deception. For example, appellant engaged in significant self-dealing by making unauthorized loans to himself from estate funds and appellant did not invest estate funds as required by R.C. 2109.41. Clearly, appellant failed to faithfully discharge his duties as executor of the estate. Therefore the probate court did not abuse its discretion in denying appellant $19,700.84 in fiduciary fees.

Next, we consider the $4,800 surcharge for appellant's attorney fees. Appellant seemingly claims that the probate court's journal entry of April 3, 1992 constitutes approval of all attorney fees billed to appellant. We disagree. The court's April 3, 1992 journal entry merely approved a $100 per hour fee agreement whereby appellant's attorney would also receive a $1,000 retainer. This journal entry does not provide appellant with authorization to pay all legal fees incurred by the estate without providing justification for those expenses to the court. See *In re Estate of Hickok* (1953), 159 Ohio St. 282, 50 O.O. 290, 111 N.E.2d 925.

Instead, R.C. 2113.36 allows the estate to reimburse the executor for the cost of reasonable attorney fees. The burden of production on the issue of

whether the attorney fees proposed to be paid by the estate are reasonable is upon the party seeking to obtain the fees. *In re Estate of Verbeck, supra,* 173 Ohio St. at 558–559, 20 O.O.2d at 164–165, 184 N.E.2d at 385–386. The ultimate issue of whether the attorney fees are reasonable is a matter committed to the discretion of the probate court. *In re Estate of Fugate, supra.* Absent an abuse of discretion, we will not reverse the determination of the probate court. *In re Estate of Wirebaugh* (1992), 84 Ohio App.3d 1, 5, 616 N.E.2d 245, 247–248. In the present case, there is no evidence in the record as to the reasonableness of the attorney fees sought by appellant. The burden of proof has not been met. It is certainly not unreasonable or arbitrary to refuse to award attorney fees when no evidence to substantiate the fees or their reasonableness is before the court. See the discussion above concerning reasonableness of fees. Therefore, the probate court did not abuse its discretion by surcharging appellant $4,800 paid out of estate funds for appellant's attorney fees.

Finally, we consider appellant's argument that the probate court erred in surcharging appellant for certain travel expenses and the repair of real estate in excess of insurance coverage. These expenses are not automatically reimbursable under R.C. 2113.35; thus we look to the provisions of R.C. 2113.36 for guidance. Again, the inquiry is whether the trial court abused its discretion in disallowing these expenditures. *Ollick v. Rice* (1984), 16 Ohio App.3d 448, 16 OBR 529, 476 N.E.2d 1062. We must therefore focus upon whether the expenses at issue were actual, necessary, just and reasonable expenses. *In re Estate of Kellhofer, supra.*

The disallowance of travel expenses is not *per se* an abuse of discretion. *Id.* When one accepts the position of executor, he must be aware of the necessity of travel associated with the position. *Id.* There is little, if any, evidence in the record to indicate that the travel expenses were actual, necessary, just and reasonable. The record shows that appellant lived in Nebraska. Appellant claims that an insurance casualty related to estate property at 132 West Second Street in Chillicothe, Ohio, and other undisclosed matters necessitated his travel to Ohio. Appellant claims that this insurance casualty resulted in two separate charges to the estate of $1,996.56 and $3,336.50 (totaling $5,303.06), over the course of one year. Living in Nebraska, appellant knew that he might be required to travel to Ohio to handle estate matters. Moreover, a total of $5,303 for travel between Nebraska and Ohio seems exorbitant at best. Finally, appellant produced no receipts or other documents to verify his claim of $5,303 for travel expenses. Therefore, the probate court's decision to surcharge appellant $5,303 for unauthorized travel expenses was not an abuse of discretion.

Similarly, we find no abuse of discretion on the part of the probate court concerning the payment of expenses for repairs in excess of insurance coverage.

The insurance expenditures at issue apparently arose out of the above-mentioned casualty in Chillicothe, Ohio. Upon reviewing the record, we can find no evidence that all of the expenditures made by appellant out of estate funds were actual, necessary, just and reasonable. The general rule is that when objections are taken to an executor's account, the burden of establishing the validity of the account is upon the executor. *In re Estate of Butler, supra.* Appellant has failed to meet this burden; therefore, the probate court did not abuse its discretion in disallowing $9,929.80 for repairs to the 132 West Second Street, Chillicothe, Ohio property in excess of insurance payments. Thus, appellant's third assignment of error is overruled.

Accordingly, the judgment of the probate court is affirmed in part and reversed in part.

*Judgment affirmed in part and reversed in part.*

PETER B. ABELE, P.J., and STEPHENSON, J., concur.